*In re* Hampe.

# City Court.

*Chambers—May,* 1887,

## IN RE HAMPE.

First cousins may lawfully intermarry.
See note as to the Marriage of Minors.

MCADAM, Ch. J.—The parties apply to have the marriage ceremony performed pursuant to a mutual promise to marry. They are first cousins ; and the question is, whether, on the ground of affinity, there is any law of this State which disqualifies them from entering into the marriage state. I find no prohibition in the statutes (3 *R. S.* 7 ed. 233?, § 3), nor any intimation against the right in the elementary works (1 *Bishop on Mar.* § 319); but direct authority in its favor (1 *Broom & Hadley's Com.*

*Wait's Notes*, 350). The ceremony may, therefore, be legally performed.

## Marriage of Minors.

THE NEW LAW FIXING THE AGE OF CONSENT—CRIMINAL LIABILITY OF CLERGYMEN AND MAGISTRATES.

*To the Editor of the New York Times ·*

The Legislature at its last session passed an act amending the Revised Statutes in regard to marriage (*Laws* 1887, ch. 24), by providing that "the age of legal consent for contracting marriage shall be eighteen years in the case of males and sixteen years in the case of females." The evident aim of the act was to prevent marriages under the prescribed ages ; but no penalties are imposed on the parties, nor are marriages under the ages specified declared void; hence it may be claimed, and not without authority, that they are voidable only under section 1743 of the Code, which provides that a marriage contract may be annulled because " one or both of the parties had not attained the age of legal consent." By the common law, males may marry at the age of fourteen, and females at the age of twelve (2 *Kent Comm.* 78). This was fixed as the age of consent, and the marriage of parties at those ages, even without the consent of their parents, was valid (Bennett *v.* Smith, 21 *Barb.* 440).

A common law, a marriage contracted under the age of consent was not regarded as void, but only as an imperfect marriage, valid unless voided by the parties after their arrival at the age of consent (1 *Bishop on Mar. & Div.* §§ 145, 148). The Iowa statute provided " that male persons of the age of eighteen years, and female persons of the age of fourteen years . . . . may be joined in marriage," and this was held not to alter the common law ; but infants below those ages, and within the common-law ages of consent, might still marry (Goodwin *v.* Thompson, 2 *Greene* [*Iowa*] 329). In North Carolina, a construction founded on a like reason with the Iowa one, was adopted. The statute provided that, "females under the age of fourteen, and males under the age of sixteen years, shall be incapable of contracting marriage," and parties having married under those ages, yet continued to cohabit until they had passed those ages, the court held the marriage to be good as at common law. Said PARSONS, Ch. J., "In the opinion of this court the only effect of the statute was to make sixteen instead of fourteen years in respect to males, and fourteen instead of twelve years in respect to females, the ages at which the parties respectively were capable of making a per-

*In re* Hampe.

fect marriage, leaving the rule of the common law unaltered in other respects " (Koonie *v.* Wallace, 7 *Jones* [*N. C.*] 194, 196).

These decisions show the tendency of the courts to uphold marriages when followed by consummation, and this on grounds of public policy; for, as was said by Vann, J., in Moot *v.* Moot (37 *Hun*, 294) : "When cohabitation has followed the marriage, the interests of society become involved, and may prevent courts from interfering, except in extreme cases, as private rights must sometimes yield to public policy." The common-law rule of fourteen in males and twelve in females as the age of consent, was derived from the civil law; also substantially from the canon. It originated in the warm climate of Italy, and it has been thought not entirely suited to more northern latitudes (*Bishop on Mar. & Div.* § 145). In the revision of the statutes the age of consent was fixed at seventeen for males and at fourteen for females ; but so deep-rooted had the common-law rule become, that the section was repealed by chapter 320 of the Laws of 1830—the Legislature of that year having arrived at the conclusion that, owing to the delicate nature of the marital relation, and the complications growing out of it, the common-law rule had better be allowed to stand.

While a marriage in this State, contracted under the age of consent fixed by the statute, may become valid, if followed by cohabitation after the arrival of the parties at that age, there are consequences entailed which seriously affect the clergyman or magistrate performing the ceremony. Section 282 of the Penal Code provides that "a person who takes a female under the age of sixteen years without the consent of her father, mother, guardian, or other person having charge of her person . . . . for the purpose of marriage . . . . is guilty of abduction, and punishable by imprisonment for not more than five years, or by a fine of not more than $1,000, or both." The presence of the parents or guardian may shield the clergyman or magistrate from trouble under this section, yet if he marries a male person under eighteen or female under sixteen, the clergyman or magistrate is, since the act of 1887, before referred to, guilty of a misdemeanor, even though the parents are present and consent to the ceremony. Section 376 of the Penal Code, which covers the case, is as follows : "A minister or magistrate who solemnizes a marriage when either of the parties is known to him to be under the age of legal consent . . . . is guilty of a misdemeanor."

The punishment is "by imprisonment in a penitentiary or county jail for not more than one year, or by a fine of not more than $500, or by both " (*Penal Code.* § 15). The duty of ascertaining the ages of the parties is by statute cast upon the person solemnizing the mar-

riage (3 *R. S.* 6 ed. 148, § 9), and for this purpose he may examine the parties, or any other person, under oath, which he is authorized to administer. The examination is to be reduced to writing, and subscribed by the parties, and persons making false statements under this oath are to be deemed guilty of willful and corrupt perjury (*Id.* 10). If the person officiating exercises every diligence, this precaution may relieve him from penal consequences, but inattention and consequent ignorance as to the ages of the contracting parties will not. Clergymen and magistrates should be informed of the new law, that they may appreciate their duty and responsibility thereunder. In marrying young people, let them ascertain beyond all reasonable doubt that the persons applying to be married are of the age of consent specified in the act of 1887, so that they may be able to prove, if called upon to do so, that the marriage meets this legal requirement.         DAVID McADAM.

(*From the New York Daily Times,* July 16, 1887.)